## THE ESTHER M. RENDLE.*

(District Court, D. Massachusetts. April 8, 1925.)

No. 3006.

1. **Shipping** ⊛➳16—Tug towing lighter to ship at sea held not making "foreign voyage."

A tug, enrolled and licensed for the coasting trade, *held* not to have "proceeded on a foreign voyage," subjecting her to forfeiture under Rev. St. § 4337 (Comp. St. § 8086), by towing a lighter from a port to a vessel hovering at sea, from which the lighter was laden with liquor, and then towing her back to port; it not appearing whether the hovering vessel was foreign or domestic.

[Ed. Note.—For other definitions, see Words and Phrases, Foreign Voyage.]

2. **Shipping** ⊛➳16—Licensed tug held not subject to forfeiture for mere towing of lighter which traded with a ship at sea.

A tug, licensed for the coasting trade, *held* not to have been employed in a trade other than that for which she was licensed, which subjected her to forfeiture under Rev. St. § 4377 (Comp. St. § 8132), by the towing of a lighter 20 miles to sea, where the lighter was laden from another vessel, and then towing her back to port.

Forfeiture Libel. Information by the United States against the steam tug Esther M. Rendle. On exceptions to libel. Exceptions sustained, and libel dismissed.

Laurence Curtis, 2d Asst. U. S. Atty., of Boston, Mass.

Geo. L. Dilloway, of Boston, Mass., for defendant.

MORTON, District Judge. This is an information to forfeit the tug for making a foreign voyage under R. S. 4337 (U. S. Comp. Stats. 8086), and for doing business outside of that for which she was licensed un-

*Decree affirmed (C. C. A.) 7 F.(2d) —.

der R. S. 4377 (U. S. Comp. Stats. 8132). It was heard on exceptions to the fifth clause of the libel. The facts for the purpose of these exceptions are assumed by both parties to be as therein stated.

The tug was enrolled and licensed for the "coasting trade." She picked up an empty lighter at or near Provincetown, towed it to an unknown vessel hovering on the coast near Stellwagen Bank, where it was loaded with liquor, and then towed it back into Boston Harbor. It is not alleged in the information that the vessel from which the liquor was obtained was a foreign vessel, nor that the tug had any dealings with her except as stated.

[1] The decisive question is whether the tug can be said to have made a "foreign voyage." The statute in question has been in force, substantially in its present form, since 1793. Referring to it in The Eliza, 7 Cranch, 113, at 114 (3 L. Ed. 286), decided in 1812, Chief Justice Marshall said: "The majority of the court is of opinion that the offense was not complete until the arrival of the vessel in a foreign port." Mr. Justice Story so decided, sitting in this circuit. The Lark, Fed. Cas. No. 8,090; Taber v. U. S., Fed. Cas. No. 13,722. The situation on this coast during the Embargo Act and the War of 1812 was, in certain respects, similar to that now prevailing; and the decisions referred to are by no means obsolete. The government relies on The Alex Clark (D. C.) 294 F. 904, in which Judge Hand expressed views which are inconsistent with the cases referred to. The case before him was one of an American vessel which provisioned a British liquor ship hovering on the coast and was herself trading with a foreign vessel. It is possible that an American vessel, which puts to sea with the intent of trading on the high seas with a foreign vessel and then returning here, might be held under this statute to have made a foreign voyage; but the contrary construction of the statute, which was made by able judges and has been recognized for about 100 years, ought not to be lightly disregarded, and should certainly be followed by a first instance court in the circuit where such decisions were made.

No such situation as Judge Hand had before him is here presented. The Rendle is not alleged to have had anything to do with the hovering vessel, nor is it alleged that the hovering vessel was a foreign vessel. The government's contention that a foreign voyage is made every time an American vessel goes beyond the territorial waters of the United States seems to me quite untenable.

A great deal of the coastwise trade goes far outside that limit. It would be surprising, and I think clearly wrong, to hold that every coastwise vessel which brings coal from Virginia points to New England over the usual route makes an illegal foreign voyage and is subject to forfeiture. I find and rule that the Rendle did not make a "foreign voyage" within the meaning of the statute.

[2] Nor do I think that the tug is forfeitable for having traded outside the employment for which she was licensed. The actual towing of a lighter 20 miles to sea is plainly within the ordinary work of a coastwise tug. In The Dolphin (C. C. A. 1st Circuit, Jan. 6, 1925) 3 F.(2d) 1, it was held that a tug and tow are not to be regarded as one vessel for forfeiture purposes; and that a tug, which has towed a barge to a steamer on the high seas from which the barge was loaded with liquor, and had then towed the barge into port in this country, was not forfeitable by reason of the offense committed by the barge. The Rendle was not affected by the illegal purpose for which the lighter was being used.

Libel dismissed.